UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ANTOINE HODGES, et al., | Case No. 2:13-CV-2014 JCM (NJK) |
| Plaintiff(s), | ORDER |
| v. | |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al., | |
| Defendant(s). | |

Presently before the court is defendant Las Vegas Metropolitan Police Department's ("LVMPD") motion for summary judgment. (ECF No. 51). Also before the court is defendant LVMPD Officer Jason Evans's ("Officer Evans") motion for summary judgment. (ECF No. 52). Plaintiffs Antoine Hodges ("Mr. Hodges" or "Hodges") and Annette Hodges ("Mrs. Hodges") filed responses to both motions. (ECF Nos. 56, 59). Officer Evans subsequently replied. (ECF No. 57).

**I.      Background**

*a. The incident*

At approximately 10:30 p.m. on October 21, 2013, Officer Evans pulled into a 7-Eleven parking lot located at 5100 Stewart Avenue, Las Vegas, Nevada. (ECF No. 51 at 4). Officer Evans saw Hodges, a black male with shoulder-length dreadlocks, walking into the 7-Eleven. (*Id.*). Officer Evans radioed his location to dispatch and stated that he had seen an individual matching the description of a double homicide suspect that occurred in the area the night before. (*Id.*).

Officer Evans asserts that Hodges turned and looked at his patrol car several times before entering the store. (*Id.*). According to Officer Evans, Hodges's behavior was suspicious enough to establish reasonable suspicion to detain Hodges to ascertain his identity and investigate his potential connection to the double homicide. (*Id.* at 4–5).

James C. Mahan
U.S. District Judge

1    Officer Evans then walked to a window of the 7-Eleven to observe Hodges's behavior

2    inside the store.  (*Id.*).  According to Officer Evans, Hodges was about to leave the store but

3    retreated back into the store upon seeing Officer Evans waiting outside.  (*Id.*).  Officer Evans offers

4    that he unholstered his duty weapon and entered the 7-Eleven to approach Hodges "[b]ecause

5    Hodges matched the description of the double homicide suspect, was in close spatial and temporal

6    proximity to the double homicide," and physically reacted to Officer Evans's presence.  (ECF No.

     51 at 5).  The incident was recorded on security cameras.  (*Id.*).

7    According to Officer Evans and the 7-Eleven clerk ("clerk"), Officer Evans entered the

8    store and told Hodges to "come here."  (*Id.*).  Hodges did not obey Officer Evans's command.  (*Id.*

9    at 6).  Officer Evans allegedly repeated his command, and Hodges allegedly ignored him again.

10   (*Id.*).  Instead, Hodges began backing away from Officer Evans down an aisle of the store.  (*Id.*).

11   As Hodges backed away, he began to reach behind his back with his right hand.  (ECF Nos. 51 at

12   6, 51-3 at 11–14).  The clerk recalled Officer Evans telling Hodges to come out of the store and

13   show his hands at least four times.  (ECF No. 51 at 6).  The clerk also recalled Hodges inserting

14   his hand into his pocket and backing up while ignoring Officer Evans's orders. (*Id.*).

15   Defendants state that Hodges's refusal to obey Officer Evans's commands—especially

16   those for Hodges to show his hands—heightened Officer Evans's suspicion that Hodges was the

17   double homicide suspect.  (ECF No. 51 at 6).  Officer Evans believed that Hodges's attempt to

18   reach behind his back indicated that he was reaching for a firearm in the waistband of his pants.

     (*See id.* at 7).

19   Officer Evans offers that, immediately after Hodges made the reaching motion behind his

20   back, he shot Hodges once out of concern for his own safety and the safety of the other people in

21   the store.  (*Id.*).  "Mr. Hodges fell to the ground," and immediately thereafter, Officer Jacinto

22   Rivera ("Officer Rivera") arrived and radioed dispatch to request medical assistance.  (*Id.*).

23   "Officer Evans handcuffed Hodges and provided medical treatment to him."  (*Id.*).

24   Hodges was unarmed at the time of the incident.  (*Id.*).  However, an officer at the scene

     found a small bag of marijuana in Hodges's front pocket.  (*Id.*).  At University Medical Center

25   ("UMC"), where Hodges was treated for his gunshot wound, a nurse found another small bag of

26   marijuana between Hodges's buttocks.  (*Id.* at 8).  Hodges received medical care at UMC for a

27   through-and-through bullet wound.  (*Id.*).  "Based upon x-rays and examination, the bullet did not

28   damage any of [Hodges's] organs."  (*Id.*).

**James C. Mahan**
**U.S. District Judge**

- 2 -

*b. After the incident*

In the days after being shot, Hodges returned to UMC twice to be treated for chest pain and muscle spasms. (*Id.* at 9). Hodges subsequently began regular treatment with several physicians, including a back specialist, a pain management specialist, and a psychiatrist. (*Id.* at 9–10). For roughly a month after the incident, Hodges used a walker and would not drive or go anywhere by himself. (*Id.* at 12).

As a result of Hodges's injuries, Mrs. Hodges claims that Mr. Hodges became unable to engage in conjugal relations. (*Id.* at 11). She also claims that Hodges became unable to assist her with parenting and that she only slept two hours per night as a result. (*Id.*).

*c. Review of the incident*

LVMPD's Force Investigation Team conducted a full investigation of the shooting and found that Officer Evans "was readily identifiable as an on-duty police officer, and was acting in the performance of his lawful duties." (*Id.* at 13). In accordance with LVMPD's policies and procedures, the Critical Incident Review Team ("CIRT") conducted a "non-criminal, administrative examination of the use of deadly force."[1] (*Id.* at 13). Additionally, further examination by the Use of Force Review Board and the Clark County District Attorney found Officer Evans's use of force justified. (*Id.* at 14).

*d. LVMPD's training and supervision of its officers*

The application program to become a LVMPD officer involves "background checks, psychological evaluation, written and oral tests, polygraphs and other examinations." (*Id.*). Officer Evans had accumulated 1,563 hours of training when the present suit was filed. (*Id.* at 15). Further, he attended LVMPD's academy in 2008, during which he experienced "21 weeks of intensive academy training and an additional 19 weeks of infield training before becoming an officer." (*Id.*). Officer Evans did not fail or need to re-take any portion of the 40-week training. (*Id.*).

LVMPD's training is nationally accredited and represents nearly twice the number of hours required by the State of Nevada under NAC § 289.140. (*Id.*). Additionally, LVMPD produces a department manual that is consistently updated. (*Id.*). The manual establishes "LVMPD's

---

[1] Defendant LVMPD indicates that "CIRT does not disseminate the contents of its investigation or findings to the Homicide Detail or the Clark County District Attorney. CIRT is for administrative purposes only." (ECF No. 51 at 13–14).

**James C. Mahan**
**U.S. District Judge**

1    expectations of its officers, its standards of conduct, and the penalties associated with violations

2    of the standards." (*Id.*).

3         LVMPD has a written policy elaborating the use of force guidelines, including

4    constitutional parameters of use of force. (*Id.* at 16). Officer Evans is trained regularly on the use

5    of force and was aware of LVMPD's use of force policy and procedure in effect as of the date of

6    the incident. (*Id.* at 15–16). Officer Evans's personnel file reflects no issues in his performance

     during the course of his employment with the LVMPD. (*Id.* at 16).

7         *e. Plaintiffs' claims*

8         The Hodges bring forth a total of six causes of action against LVMPD and Officer Evans:

9    (1) violations of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983;[2] (2) a *Monell*

10   claim under 42 U.S.C. § 1983;[3] (3) negligence; (4) assault and battery; (5) false arrest and false

11   imprisonment; and (6) loss of consortium. (ECF No. 1).

12        LVMPD argues that it is entitled to summary judgment on plaintiffs' federal claims for

13   violation of his civil rights. It argues that plaintiffs have failed to present evidence of (a) an official

     or de facto policy of excessive force; (b) deliberate indifference to plaintiffs' rights with respect to

14   its training practices; or (c) deliberate indifference with respect to its hiring practices. (ECF No.

15   51 at 19–21). LVMPD contends that plaintiffs cannot therefore sustain a *Monell* claim against it.

16   (*Id.* at 25). LVMPD adds that it is protected by discretionary function immunity pursuant to NRS

17   § 41.032 for all of plaintiffs' state law claims. (*Id.* at 25–26).

18        LVMPD adopts Officer Evans's argument with respect to the loss of consortium claim.

19   (*Id.* at 29). Defendants argue that because loss of consortium claims are derivative in Nevada, the

20   plaintiffs' claim necessarily fails because they have not established any other viable claims. (ECF

21   No. 52 at 13). Officer Evans argues that he is entitled to summary judgment on plaintiffs' § 1983

22   claim against him because the doctrine of qualified immunity protects him from liability under §

23   1983. (*Id.* at 4). Officer Evans further argues that the Hodges have failed to establish *prima facie*

     cases for negligence, assault and battery, and false arrest and imprisonment. (*Id.* at 11–13).

24   . . .

25   . . .

26

27
     _____

28       [2] Hodges's first cause of action is plead against Officer Evans only. (ECF No. 1 at 5).

         [3] Hodges's second cause of action is plead against LVMPD only. (ECF No. 1 at 6).

**James C. Mahan**
**U.S. District Judge**
                                             - 4 -

1

## II.      Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323– 24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial."  *Id.*

In determining summary judgment, the court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).  Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."  *Id.*

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159– 60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

**James C. Mahan**
**U.S. District Judge**

1    versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,

2    630 (9th Cir. 1987).

3    **III.      Discussion**

4            The court will address plaintiffs' federal claims against Officer Evans and the LVMPD in

5    turn.  The analysis will then turn to plaintiffs' state law claims.

6            *a. 42 U.S.C. § 1983 claim against Officer Evans*

7            The Hodges relevantly base their § 1983 claim against Officer Evans on allegations that

     Officer Evans violated Mr. Hodges's Fourth and Fourteenth Amendment rights by using

8    unreasonable and excessive force against Hodges.  (ECF No. 1 at 5).

9            Officer Evans argues that he is entitled to summary judgment on the § 1983 claim because

10   he is entitled to qualified immunity.  (ECF No. 52 at 4).  When a plaintiff brings a claim under 42

11   U.S.C. § 1983, government officials sued in their individual capacities may raise the affirmative

12   defense of qualified immunity.  *See Spoklie v. Montana,* 411 F.3d 1051, 1060 (9th Cir. 2005).

13   "Qualified immunity balances two important interests—the need to hold public officials

14   accountable when they exercise power irresponsibly and the need to shield officials from

15   harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v.*

16   *Callahan*, 555 U.S. 223, 231 (2009).  It protects government officials performing discretionary

17   functions from liability for civil damages as long as their conduct does not violate "clearly

18   established statutory or constitutional rights of which a reasonable person would have known."

19   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "The principles of qualified immunity shield an

20   officer from personal liability when an officer reasonably believes that his or her conduct complies

21   with the law."  *Pearson*, 555 U.S. at 244.  Qualified immunity may apply even if the defendant

     makes a mistake of law or acts based upon a mistake of fact.  *Id.* at 231.

22           Deciding whether an officer is entitled to qualified immunity is a two-step inquiry.  *Id.* at

23   232.   First, the court assesses whether the plaintiff has alleged or shown a violation of a

24   constitutional right.  *Id.*  Second, the court decides whether the right at issue was clearly established

     at the time of the defendant's alleged misconduct.  *Id*.  The Supreme Court has instructed that

25   district judges may use their discretion when deciding which qualified immunity prong to address

26   first based on the circumstances of the case at issue.  *See id.* at 236.

27           The court will turn first to the second prong of the qualified immunity test and determine

28   whether the right plaintiff claims was violated was "clearly established."  *See id.*  "[T]he right the

**James C. Mahan**
**U.S. District Judge**

1  official is alleged to have violated must have been 'clearly established' in a more particularized,

2  and hence more relevant, sense: [t]he contours of the right must be sufficiently clear that a

3  reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*,

4  533 U.S. 194, 202 (2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).   The

5  dispositive question is "whether it would be clear to a reasonable officer that his conduct was

6  unlawful in the situation he confronted." *Id.*

7        In *Saucier,* the Court evaluated the clearly established standard in the same context as this

      case—excessive force.  The Court reasoned:

8  
9  
10  
11  
12  

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

13  *Id.*

14        Later, in *Ashcroft v. al-Kidd*, the Court further emphasized that lower courts should not

15  define "clearly established law at a high level of generality."  563 U.S. 731, 742 (2011).  "The

16  general proposition, for example, that an unreasonable search or seizure violates the Fourth

17  Amendment is of little help in determining whether the violative nature of particular conduct is

18  clearly established." *Id.*  In the Ninth Circuit, a court begins its inquiry of whether a right is clearly

19  established by looking to binding precedent addressing the allegedly violated right.  *See Boyd v.*

20  *Benton Cnty.*, 374 F.3d 773, 780–82 (9th Cir. 2004).

21        Here, plaintiffs base their § 1983 claim on allegations that Officer Evans violated Hodges's

22  rights by using excessive force and executing an unreasonable seizure against him.  (ECF No. 5).

23  The three-factor test for determining whether a use of force was excessive or reasonable under

      "established" law is explained in *Graham v. Connor.  See* 490 U.S. 386, 394–95 (1989).

24        Under *Graham*, courts must give "careful attention to the facts and circumstances of each

25  particular case, including [i] the severity of the crime at issue, [ii] whether the suspect poses an

26  immediate threat to the safety of the officers or others, and [iii] whether he is actively resisting

27  arrest or attempting to evade arrest by flight." *Id.* at 396.  The three *Graham* factors create a fluid

28  standard for defining a reasonable amount of force.  *See Pearson*, 555 U.S. at 227.

**James C. Mahan**
**U.S. District Judge**

- 7 -

1    Indeed, this analysis is "highly fact-specific but the inquiry is an objective one." *Wilkinson*

2  *v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010) (citing *Scott v. Harris*, 550 U.S. 372, 383 (2007)).

3  The determination turns on both the conduct of the suspect or arrestee, as well as the circumstances

4  surrounding his arrest.  *See id.*  Indeed, "[a] reasonable use of deadly force encompasses a range

5  of conduct, and the availability of a less-intrusive alternative will not render conduct

6  unreasonable." *Id.* (citing *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)).

7    The court will now assess the totality of the circumstances by weighing the three *Graham*

8  factors in turn.  *See id.*; *see also Blanford v. Sacramento City.*, 406 F.3d 1110, 1115 (9th Cir. 2005).

9    i.    *Severity of the crime at issue*

10    Under this prong of the *Graham* analysis, a police officer's use of a high degree of force is

11  often justified if the underlying suspected crime is a serious felony that is inherently violent.  *See*

12  *Lowry v. City of San Diego*, 818 F.3d 840, 844 (9th Cir. 2016) (finding that the first *Graham*

13  consideration was "only slightly" in favor of defendant bitten by a police dog because officers

14  were responding to a potential burglary, which is "not an inherently dangerous crime"); *Young v.*

15  *City. of Los Angeles*, 655 F.3d 1156, 1165 (9th Cir. 2011) (finding that the first *Graham*

16  consideration was not in defendant's favor when plaintiff did not use a seatbelt while driving and

17  ignored law enforcement officer instructions to re-enter the vehicle because "such conduct still

18  constitute[d] only a non-violent misdemeanor offense that will tend to justify force in far fewer

19  circumstances than more serious offenses, such as violent felonies"); *Bryan v. MacPherson*, 630

20  F.3d 805, 829 (9th Cir. 2010) (finding this prong weighed against the use of force because "[n]one

21  of the offenses for which [plaintiff] was cited or of which he was suspected is inherently dangerous

     or violent, and . . . [plaintiff] posed little to no safety threat").

22    A double homicide accomplished by firearm is obviously a serious, violent crime.

23  Moreover, the seriousness and character of the double homicide is relevant to Officer Evans's

     actions towards Hodges at the 7-Eleven because Officer Evans engaged contact with Hodges due

24  to: (1) Hodges's physical similarity to the homicide suspect's description; (2) the temporal and

25  spacial proximity to the crime scene; and (3) Officer's Evans's knowledge that a handgun was

26  used in the double homicide yet not recovered at the scene.  (ECF No. 51 at 3–5).  Therefore, this

27  *Graham* consideration supports Officer Evans's use of force.

28  . . .

**James C. Mahan**
**U.S. District Judge**

1

                    *ii.    Immediate threat to the safety of Officer Evans and others*

2          The second factor, whether Hodges posed an immediate threat to the safety of the officers

3   or others, is the most important *Graham* inquiry.  *See, e.g., Smith v. City of Hemet*, 394 F.3d 689,

4   702 (9th Cir. 2005).  An officer may not use deadly force to apprehend a suspect where the suspect

5   poses no immediate threat to the officers or others.  *See Tennessee v. Garner*, 471 U.S. 1, 11

6   (1985).

           An officer's good intentions will not "make an objectively unreasonable use of force

7   constitutional."  *Graham*, 490 U.S. at 397.  When a court considers whether an immediate threat

8   existed, a "simple statement by an officer that he fears for his safety or the safety of others is not

9   enough; there must be objective factors to justify such a concern."  *Mattos v. Agarano*, 661 F.3d

10  433, 441–42 (9th Cir. 2011) (quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1281).

11         It is undisputed that Hodges did not possess a weapon at the time of the incident.  (ECF

12  No. 51 at 7).  Yet "[t]he 'reasonableness' of a particular use of force must be judged from the

13  perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

    *Graham*, 490 U.S. at 396 (1989).

14
           Further, law enforcement officers may use lethal force against a suspect even if a weapon

15  is not clearly in that suspect's control.  *See George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013)

16  ("This is not to say that the Fourth Amendment always requires officers to delay their fire until a

17  suspect turns his weapon on them.").  Indeed, "[i]f the person is armed—or reasonably suspected

18  of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an

19  immediate threat."  *Id.*

20         Here, the critical issue for this prong of the *Graham* analysis is whether Hodges objectively

21  appeared to a pose a threat to the people, including Officer Evans, inside the 7-Eleven.  (ECF No.

22  51-3 at 21).  The court confronts a dispute of material fact in this area.  Officer Evans asserts that

23  he ordered Hodges to show his hands "at least four times[,]" (ECF No. 51-2 at 8) and the clerk

24  also offers that Officer Evans told Hodges "three or four times[] for Mr. Hodges to take his hand

25  out of his pocket." (ECF No. 51-3 at 22).  In contrast, Hodges states in his deposition that he heard

    no such orders and did not see Officer Evans's mouth moving at the time.  (ECF No. 51-2 at 26).

26

27

28

**James C. Mahan**
**U.S. District Judge**

                                                - 9 -

1   The security videos from the store do not present an audio record, and the visual evidence from

2   those recordings do not clearly indicate verbal interaction.[4]  (*See* ECF No. 51-3 at 11–14).

3          The verbal interaction between plaintiff and defendant here are material to this analysis

4   because a discussion of the objective circumstances of the confrontation, possibly leading an

5   officer to conclude that Hodges posed a risk to the people inside the 7-Eleven store, would be

6   incomplete without settled facts regarding the course of spoken communication between the pair.

7   *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866–67 (2014) (critiquing a court's application of the

8   summary judgment standard's view of facts most favorable to the non-moving party within the

    context of verbal communication between an officer and a suspect).

9          On one hand, if Officer Evans and the clerk are correct, then Hodges's noncompliance with

10  that order in light of Officer Evans's suspicion that Hodges was involved in a double homicide,

11  that he could be carrying a handgun from that crime, and Officer Evans's belief that Hodges was

12  acting unusually around him could support a conclusion that the use of deadly force in this scenario

13  was reasonable.

14         On the other hand, Hodges has indicated that he did not hear any such order and instead

15  verbalized both his confusion and intent to provide identification to the officer.  (ECF Nos. 51-2

    at 26, 51-4 at 32–33).  If this is true, it is not clear, viewed objectively in light of the totality of the

16  circumstances of this case, whether or not the use of deadly force was reasonable because the

17  course of communication between Hodges and Officer Evans presented to the court would appear

18  incomplete.

19         Critically, the motions under consideration here are motions for summary judgment.  It is

20  not up to a judge to determine the relative credibility of parties with conflicting statements of fact;

21  instead, that responsibility rests with a jury.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

22  255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of

23  legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling

24  on a motion for summary judgment or for a directed verdict.").  "[C]ourts may not resolve genuine

25

26         [4]  It is undisputed that Hodges put his hand down towards his pants, and the video
    recordings confirm this to be the case.  (*See* ECF No. 51-3 at 11–14).  Yet, the "Officer's Report"
27  indicates that the security camera positioned for "an ideal perspective" of the incident was having
    technical trouble, although other camera angles were available.  (*See* ECF Nos. 51-3 at 11–14, 51-
28  5 at 14).  There were also two other people in the store, but they were not able to understand what
    was being said and did not see the shooting.  (ECF No. 51-10 at 15–16).  Accordingly, the record
    does not "blatantly contradict" Hodges's statements.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**James C. Mahan**
**U.S. District Judge**

- 10 -

1   disputes of fact in favor of the party seeking summary judgment." *Tolan*, 134 S. Ct. at 1866 (citing

2   *Brosseau v. Haugen,* 543 U.S. 194, 195, n. 2 (2004)).

3        Additionally, the Ninth Circuit has relevantly indicated "that summary judgment or

4   judgment as a matter of law in excessive force cases should be granted sparingly.  This is because

5   police misconduct cases almost always turn on a jury's credibility determinations." *Espinosa v.*

    *City & City of San Francisco*, 598 F.3d 528, 544 (9th Cir. 2010).

6        Therefore, this court can not say which version of the facts is to be believed and similarly

7   cannot grant summary judgment in favor of the defendant because the "most important" prong of

8   the *Graham* analysis cannot be properly decided due to a dispute of material fact.  *Smith*, 394 F.3d

9   at 702; *see also Tolan*, 134 S. Ct. at 1866.  Accordingly, the court will deny Officer Evans's motion

10  for summary judgment on this claim (ECF No. 52).

11        *b. 42 U.S.C. § 1983,* Monell *claim against LVMPD*

12        Defendant LVMPD argues that it is entitled to summary judgment on the plaintiffs' federal

13  claims because they have failed to establish municipal liability for Officer Evans's allegedly

14  unconstitutional conduct. (ECF No. 51).  LVMPD argues that the Hodges cannot make a showing

15  sufficient to establish the elements of a municipal liability claim.  (ECF No. 51).  It contends that

16  plaintiffs cannot produce evidence of (1) a deliberately indifferent policy or custom, (2) inadequate

17  training of LVMPD's officers, or (3) indifferent hiring.  (ECF No. 51 at 20–25).  In support of its

18  contention, LVMPD offers evidence of its hiring policies and its training policies.  (ECF No. 51-
    10).

19        The principal framework governing municipal liability in § 1983 actions was established

20  in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Under *Monell*, municipal liability must be

21  based upon the enforcement of a municipal policy or custom, not upon the mere employment of a

22  constitutional tortfeasor. *Id.* at 691.  Therefore, in order for liability to attach, four conditions must

23  be satisfied: "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2)

    that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the

24  plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional

25  violation.'" *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996).

26        "To prevent municipal liability . . . from collapsing into respondeat superior liability,"

27  federal courts must apply "rigorous standards of culpability and causation" in order to "ensure that

28  the municipality is not held liable solely for the actions of its employees." *Board of Cnty. Comm.*

**James C. Mahan**
**U.S. District Judge**

1    *of Bryan City v. Brown*, 520 U.S. 397, 405, 410 (1997).  Thus, a municipality will only be liable

2    when the "execution of a government's policy or custom . . . inflicts the injury . . . ."  *Monell*, 463

3    U.S. at 694.

4         "Proof of random acts or isolated events" does not fit within *Monell*'s meaning of custom.

5    *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989), *overruled on other grounds*,

6    *Bull v. City & City of San Francisco*, 595 F.3d 964 (9th Cir. 2010).  Indeed, "[o]nly if a plaintiff

7    shows that his injury resulted from a 'permanent and well-settled' practice may liability attach for

8    injury resulting from a local government custom."  *Id.* (quoting *City of St. Louis v. Praprotnik*, 485

9    U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 168 (1970))).

10        It is well settled in the Ninth Circuit that a plaintiff can not establish a *de facto* policy with

11   a single constitutional violation.  *See, e.g.*, *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999).

12   Instead, a plaintiff's theory must be founded upon practices of "sufficient duration, frequency and

13   consistency that the conduct has become a traditional method of carrying out policy."  *Trevino v.*

14   *Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *see also McDade v. West*, 223 F.3d 1135 (9th Cir. 2000).

15        Defendant LVMPD has demonstrated that plaintiffs have failed to make a showing

16   sufficient to establish the element essential to their § 1983 claim.  *See Celotex*, 477 U.S. at 323–

17   24.  LVMPD argues convincingly that plaintiffs have not offered evidence that sufficiently shows

18   that LVMPD has a policy, de facto or official, that allows or encourages its officers to use

19   excessive force.  Plaintiffs also fail to demonstrate any connection between the supposed policy

20   and the conduct alleged in this action.  The court therefore cannot draw an inference that the policy

21   is the "moving force behind the [alleged] constitutional violation."  *See Van Ort*, 92 F.3d at 835

22   (internal quotation marks omitted).

23        Because plaintiffs have failed to demonstrate any custom or policy held by LVMPD that

24   led to the deprivation of Hodges's constitutional rights, summary judgment will consequently be

25   granted in favor of defendant LVMPD with respect to plaintiffs' *Monell* claim.

26        *c.  Plaintiffs' state law claims*

27        Plaintiffs bring claims for negligence, assault and battery, and false arrest and

28   imprisonment against LMVPD and Officer Evans under Nevada State Law.[5]  LVMPD argues that

the defendants are shielded from liability by the principle of discretionary immunity, codified by

---

[5]  The court has jurisdiction over the state law claims here under 28 U.S.C. § 1367.

**James C. Mahan**
**U.S. District Judge**

- 12 -

NRS § 41.032.  Officer Evans argues that the plaintiffs have failed to establish *prima facie* cases for negligence, assault and battery, and false arrest and imprisonment.  (ECF No. 52 at 11–13).

### i.         Discretionary immunity

Nevada has waived its general state immunity under NRS § 41.031.  The state's waiver of immunity is not absolute; the state has retained a "discretionary function" form of immunity for officials exercising policy-related or discretionary acts.  *See* NRS § 41.032.[6]

In 2007, the Nevada Supreme Court adopted the United States Supreme Court's *Berkovitz-Gaubert* two-part test regarding discretionary immunity.  *See Martinez v. Maruszczak*, 168 P.3d 720, 722, 728–29 (Nev. 2007).  Under Nevada law, state actors are entitled to discretionary-function immunity under NRS § 41.032 if their decision "(1) involve[s] an element of individual judgment or choice and (2) [is] based on considerations of social, economic, or political policy." *Id.* at 729.  "[F]ederal courts applying the *Berkovitz-Gaubert* test must assess cases on their facts, keeping in mind Congress' purpose in enacting the exception: to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *See id.* at 729 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)) (internal quotation marks omitted).

Police officers "exercise[ ] discretion and [are] thus generally immune from suit where the act at issue require[s] 'personal deliberation, decision, and judgment,' rather than 'obedience to orders, or the performance of a duty in which the officer is left no choice of his own.'" *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1168 (9th Cir. 2014) (citing *Davis v. City of Las Vegas*, 478 F.3d 1048, 1059 (9th Cir. 2007)).  Further, "acts which violate the Constitution are not discretionary." *Estate of Sauceda ex rel. Sauceda v. City of N. Las Vegas*, no. 2:11-cv-02116-APG-NJK, 2015 WL 871611, at *9 (D. Nev. Mar. 2, 2015), *reconsideration denied sub nom. Estate of Sauceda v. City of N. Las Vegas*, no. 2:11-cv-02116-GMN-NJK, 2015 WL 7737338 (D. Nev. Dec. 1, 2015).

---

[6] NRS § 41.032 states in relevant part that no action may be brought against a state officer or official which is "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions . . . whether or not the discretion involved is abused."  NRS § 41.032(2).

**James C. Mahan**
**U.S. District Judge**

- 13 -

1    Immunity attaches under the second criterion "if the injury-producing conduct is an integral

2    part of governmental policy-making or planning, if the imposition of liability might jeopardize the

3    quality of the governmental process, or if the legislative or executive branch's power or

4    responsibility would be usurped." *Martinez*, 168 P.3d at 729.  The trial court does not determine

5    a police officer's "subjective intent in exercising the discretion conferred by statute or regulation,

6    but [rather focuses] on the nature of the actions taken and on whether they are susceptible to policy

7    analysis." *Id.* at 728 (quoting *United States v. Gaubert*, 499 U.S. 315, 325 (1991)).  Therefore, to

8    satisfy the second criterion, the court need not consider whether Officer Evans "made a conscious

     decision regarding policy considerations . . . ." *Id.*

9                              *A.      Officer Evans*

10    With respect to the first prong of the *Martinez* test, Officer Evans's decisions regarding the

11   amount of force necessary under the circumstances are discretionary acts because those decisions

12   involve elements of individual judgment and choice.  Evaluating how much force is necessary at

13   any given moment involves examining the totality of the circumstances and making moment-to-

14   moment decisions in a rapidly evolving situation.  *See Graham*, 490 U.S. at 394–96. Officer

     Evans's decisions were therefore discretionary in nature.

15    The court concludes, however, that Officer Evans's conduct does not meet the

16   requirements of the second prong of the test.  His decision regarding the appropriate degree of

17   force to use did not involve any social, economic, or policy considerations within the meaning of

18   *Martinez.  See* 168 P.3d at 728, *see also Vasquez-Brenes v. Las Vegas Metro. Police Dep't*, 51 F.

19   Supp. 3d 999, 1013 (D. Nev. 2014) (applying *Martinez* to a police offer's decision regarding the

20   level of force to use).

21    The level or degree of force that officers choose to use on a case-by-case basis is not an

22   "integral part of governmental policy-making or planning." *Vasquez-Brenes*, 51 F. Supp. 3d at

23   1013 (quoting *Martinez*, 168 P.3d at 729).  This court has reasoned that "imposing liability on

24   officers who exceed the permissible use of force does not jeopardize the quality of the

25   governmental process." *Id.*  Therefore, Officer Evans does not qualify for discretionary immunity

     with respect to plaintiffs' state law claims.

26                             *B.      LVMPD*

27    With respect to plaintiffs' claims against LVMPD, this court has specifically held that

28   Nevada's discretionary-function immunity statute, NRS § 41.032(2), bars claims not only for

**James C. Mahan**
**U.S. District Judge**

1   negligent hiring, training, and supervision, but also for battery.  *See Vasquez-Brenes*, 51 F. Supp.

2   3d at 1013; *Beckwith v. Pool*, no. 2:13-cv-125-JCM-NJK, 2013 WL 3049070, at *5–6 (D. Nev.

3   June 17, 2013); *Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1170, 1192 (D.

4   Nev. 2008) ("Because Nevada looks to federal case law to determine the scope of discretionary

5   immunity, and because federal case law consistently holds training and supervision are acts

6   entitled to such immunity, LVMPD is entitled to discretionary immunity . . . .").

7           Discretionary-function immunity, therefore, applies to the LVMPD with respect to the state

8   battery and negligence claims.  Summary judgment will therefore be granted in favor of defendant

9   LVMPD with respect to plaintiffs' third and fourth causes of action.  The claim for false arrest

    against LVMPD will be addressed below, alongside its application to Officer Evans.

10                      *ii.        Negligence claim against Officer Evans*

11          To prevail on a claim for negligence, a plaintiff must generally show that: "(1) the

12  defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach

13  was the legal cause of the plaintiff's injury; and (4) the plaintiff suffered damages."  *Scialabba v.*

14  *Brandise Const. Co., Inc*., 921 P.2d 928, 930 (Nev. 1996).  Under Nevada law, the questions of

15  proximate cause and reasonableness presented by a negligence claim usually advance questions of

    fact for the jury.  *Frances v. Plaza Pacific Equities*, 847 P.2d 722, 724 (Nev. 1993).

16          As discussed above in the first § 1983 claim discussion, the court cannot, within the

17  constraints of a motion for summary judgment, make a determination as a matter of law that

18  Officer Evans's use of deadly force was reasonable due to a dispute of material fact.  Indeed, this

19  determination is better left to a jury.  *See id.*  Thus, there are questions of fact underlying the

20  questions of proximate cause and reasonableness in this case.  *See id.*  The court therefore must

21  deny Officer Evans's motion for summary judgment on plaintiffs' negligence claim.

22                      *iii.       Assault and battery claim against Officer Evans*

23          Officer Evans argues that his use of force against Hodges was lawful and that plaintiffs

    therefore cannot establish a *prima facie* case for battery. (ECF No. 52 at 12).

24          Under Nevada law, a police officer is privileged to use the amount of force reasonably

25  necessary.  *See Vasquez-Brenes*, 51 F. Supp. 3d at 1014; *see also Clark v. Campbell*, no. 3:14-cv-

26  00333-LRH-WGC, 2015 WL 7428554, at *5 (D. Nev. Nov. 20, 2015).

27

28

**James C. Mahan**
**U.S. District Judge**

- 15 -

1  Yet, an officer who uses more force than is reasonably necessary is liable for battery.  *See*

2  *Yada v. Simpson*, 913 P.2d 1261, 1262 (Nev. 1996); *see also Ramirez v. City of Reno*, 925 F. Supp.

3  681, 691 (D. Nev. 1996) (applying Nevada law).

4  The court has already found that a dispute of fact exists that is material to the

5  "reasonability" analysis.  Officer Evans is not entitled to summary judgment on plaintiffs' § 1983

6  claim against him primarily for that reason.  Similarly, the court must deny Officer Evans's motion

7  for summary judgment on plaintiffs' assault and battery claim.  *See Vasquez-Brenes*, 51 F. Supp.

   3d at 1014; *Ramirez*, 925 F. Supp. at 691.

8                  *iv.*        *False arrest and imprisonment*

9  On the face of the complaint, plaintiffs appear to base their false arrest and imprisonment

10  claim on the argument that Officer Evans did not have legal probable cause to "arrest" Hodges by

11  handcuffing him inside the 7-Eleven.  (ECF No. 1 at 11).  Officer Evans argues that the basis for

12  handcuffing Hodges was for officer safety while he gave Hodges medical attention and checked

13  for possession of weapons.  (ECF No. 52 at 13).  It is undisputed that Hodges was released from

   handcuffs as soon as Hodges's identity was ascertained.  (*Id.*).

14  In Nevada, false imprisonment is the confinement or detention of another person without

15  sufficient legal authority.  NRS § 200.460.  A law enforcement officer is authorized by state statute

16  to "detain any person whom the officer encounters under circumstances which reasonably indicate

17  that the person has committed, is committing or is about to commit a crime."  NRS § 171.123.

18  Thus, "to establish false imprisonment of which false arrest is an integral part, it is only necessary

19  to prove that the person [was] restrained of his liberty under the probable imminence of force

20  without any legal cause or justification . . . ."  *Marschall v. City of Carson*, 464 P.2d 494, 497

21  (Nev. 1970); *see also Garton v. City of Reno*, 720 P.2d 1227, 1228–29 (Nev. 1986).  Moreover,

22  the excessive force and false arrest factual inquiries are distinct; establishing a lack of probable

23  cause to make an arrest does not establish an excessive force claim, and the reverse is also true.

   *See Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2003).

24  Here, the complaint's relevant factual assertions for its false arrest claim, in light of NRS

25  § 200.460's application to confinement or detention, appear to be that "[t]he actions of Defendants

26  LVMPD . . . [and] Defendant Evans['s] . . . conduct of falsely handcuffing Mr. Hodges without

27  legal probable cause when Plaintiff had not done anything illegal and was not committing any

28  crime . . . ."  (ECF No. 1 at 11).

**James C. Mahan**
**U.S. District Judge**

1  Hodges thought that Officer Evans was not the police officer who administered the

2  handcuffs.  (ECF No. 51-2 at 27).  However, Officer Evans suggests that he may have been the

3  one to do so.  (ECF No. 51-2 at 9).  Yet Hodges's belief that Officer Rivera was the officer who

4  applied the handcuff is not defeated by security video footage.[7]  In the video, Officer Evans

5  moves behind defendant, seems to have him pinned down in an arresting stance, and appears to be

6  reaching to the back of his belt.  (ECF No. 51-3)  But the video then skips nineteen seconds and

   then skips another thirty-five seconds.  (*Id.*).  Therefore, the video does not definitively show which
7
   officer placed the handcuffs on Hodges.
8
        "If an officer has probable cause to believe that an individual has committed even a very
9
   minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest
10
   the offender."  *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).  While there is a dispute
11
   as to material fact regarding the totality of the verbal interaction between Hodges and Officer
12
   Evans, there is no dispute that Hodges did violate the narrow meaning of one order: to not move
13
   backwards.  (ECF Nos. 51-2 at 8, 51-4 at 33).  Therefore, Hodges delayed Officer Evans's
14
   reasonable investigation related to the prior double homicide—which was supported by articulable
15
   facts—so Officer Evans's use of handcuffs would be appropriate pursuant to NRS § 199.280,
   which criminalizes the act of delaying an officer from completing his or her legal duty.[8]
16
        Moreover, there would be no violation of Hodges's constitutional rights even if Officer
17
   Rivera was the individual who handcuffed Hodges.  Relevantly, the collective knowledge doctrine
18
   applies to this scenario because here "law enforcement agents [were] working together in an
19
   investigation but ha[d] not explicitly communicated the facts each ha[d] independently learned."
20
   *United States v. Villasenor*, 608 F.3d 467, 475 (9th Cir. 2010) (quoting *United States v. Ramirez*,
21
   473 F.3d 1026, 1032 (9th Cir. 2007)).
22
        First, Officer Evans communicated over the radio that he saw someone matching the
23
   double homicide suspect's description, and Officer Rivera heard that message.  (ECF No. 51-5 at
24
   6).  Next, Officer Rivera was on site when he heard the gunshot.  (*Id.*).  Further, Officer Rivera
25

26
   _____

27    [7]  Camera one of Exhibit E (ECF No. 51-3) appears to show part of the handcuffing scene
      from 22:32:10 to 22:32:31.
28
      [8]  The court assumes, *arguendo*, that an arrest took place.

**James C. Mahan**
**U.S. District Judge**
                                    - 17 -

1  "could smell the odor of marijuana," (ECF No. 51-10 at 9), and Hodges admitted that he had

2  marijuana on his person (ECF No. 51-2 at 24).  *See Atwater*, 532 U.S. at 354.

3      Because Officer Rivera's presence at the store was a result of Officer Evans's broadcast

4  that he was going to "contact" someone who matched the double homicide suspect's description,

5  Officer Rivera was part of the same investigation.  *See Villasenor*, 608 F.3d 467 at 475.  Therefore,

6  Officer Evans's knowledge of Hodges's delay of his investigation may be imputed to Officer

7  Rivera.  Because both officers who may have placed handcuffs on Hodges also had legal cause to

8  arrest him, LVMPD is consequently free from liability under this claim.  Accordingly, summary

   judgment will be granted for both defendants on this claim.

9                    *v.        Loss of consortium*

10      In Nevada, loss of consortium claims are derivative and therefore cannot survive without

11 another existing cause of action.  *See Gunlock v. New Frontier Hotel Corp.*, 370 P.2d 682, 684 n.

12 1 (Nev. 1962); *see also Gen. Elec. Co. v. Bush*, 498 P.2d 366, 371 (Nev. 1972), *abrogated on other

13 grounds*, *Motenko v. MGM Dist., Inc.*, 921 P.2d 933 (Nev. 1996).  Currently, none of plaintiffs'

14 claims survive against LVMPD.  Because this claim is derivative, plaintiffs' inability to attach

   liability to LMVPD similarly precludes a loss-of-consortium analysis against it.  However, some

15 of plaintiffs' claims against Officer Evans survive, so a loss of consortium analysis is proper

16 against that defendant.

17      Among other things, loss of consortium is based on the recognition of harm stemming from

18 one spouse's loss of another spouse's companionship.  *See Gen. Elec. Co.*, 498 P.2d at 367. Officer

19 Evans argues that "it is clear that any injury sustained by Mr. Hodges had no effect on the marital

20 relationship between the parties . . ." based on Hodges's alleged "reliance on narcotic pain

21 medications[,]" that Mrs. Hodges filed a temporary protective order, and that Mr. Hodges was

22 physically able to engage in sexual relations with another woman.  (ECF No. 52 at 14).

23      Conversely, Mrs. Hodges responded "[y]es" to the interrogatory "Do you contend that you

24 suffered impairment of conjugal relations as a result of any injury sustained by your Spouse?"

   (ECF No. 51-6 at 43).  She also notes that her husband had physical impairment after the shooting,

25 became depressed, had difficulty "keep[ing] food down" for between four to six months, and had

26 to use a walker for "[a]bout a month."  (ECF No. 51-8 at 9–10).

27      Regarding plaintiffs' loss of consortium claim, the court finds that the non-moving party

28 has "set forth specific facts showing that there is a genuine issue for trial."  *Lujan*, 497 U.S. at 888.

**James C. Mahan**
**U.S. District Judge**

1    As illustrated above, both sides allege facts addressing the level intramarital harm caused by the

2    shooting.  Therefore, the ultimate answer regarding the impact of the shooting—if it was done

3    unreasonably—on the marital relations between Mr. Hodges and Mrs. Hodges cannot be clearly

4    determined as a matter of law.  Accordingly, summary judgment on this claim is therefore

5    improper.

**IV.    Conclusion**

6            In summary, plaintiffs' first claim that Officer Evans's use of force violated the Fourth and

7    Fourteenth Amendments survives his motion for summary judgment.  Second, plaintiffs' *Monell*

8    claim falls to LVMPD's motion for summary judgment because they have not shown that any

9    LVMPD custom or policy led to the deprivation of Hodges's constitutional rights.  Third, LVMPD

10   has discretionary immunity against the negligence and assault and battery claims.  Fourth, there is

11   a dispute of material fact relevant to the negligence and assault and battery claims against Officer

12   Evans, so summary judgment as it relates to those claims against him cannot be granted.  Fifth,

13   summary judgment is granted for both Officer Evans and LVMPD against plaintiffs' false arrest

14   and false imprisonment claim.  Finally, LVMPD has no liability to plaintiffs under a loss of

15   consortium theory.  However, Officer Evans may still be liable under that theory, so his motion

16   for summary judgment fails against plaintiffs' loss of consortium claim.

17           Accordingly,

18           IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant Officer

19   Evans's motion for summary judgment (ECF No. 52) be, and the same hereby is, GRANTED IN

20   PART and DENIED IN PART, consistent with the foregoing.

21           IT IS FURTHER ORDERED that defendant LVMPD's motion for summary judgment

22   (ECF No. 51) be, and the same hereby is, GRANTED, consistent with the foregoing.

23           DATED September 6, 2016.

     _____
     UNITED STATES DISTRICT JUDGE

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**

- 19 -